May it please the court. My name is Sheila Thomas and I represent the appellant, Deborah Taylor Johnson, in this action. With the court's permission... Is she with you in court today? She is. She is right there. And I would like, with the court's permission, to reserve five minutes for rebuttal. The court, the district court in this action, correctly held that Ms. Johnson established a prima facie case and held that Ms. Johnson had established questions of fact on three key issues. One, Ms. Johnson was similarly situated to her male deputy chief colleagues. Two, that the Oakland City Administrator, Dan Lindheim, had the discretion to adjust Ms. Johnson's salary to the same level as her male colleagues, the deputy chiefs. And even if she or even if her salary was at a flat rate, as the city proposes, that she would have been entitled to COLA increases. The third... I take it from what you've just said, that if, hypothetically, the panel were to conclude that she was, in fact, a flat-rate employee, your position is that she was still entitled to the retroactive salary increase. Yes. That's our position. Okay. I would also just point out the fact that, as I'll argue later, that the flat salary is a question in dispute, which because there's a question as to whether it was within our salary range as a deputy director position. And then the third issue is, is that Mr. Lindheim, contrary to the city's position, there's evidence that he actually supported the salary increases for Chief Tucker and the assistant chief, Jordan. For these reasons, we believe that the city of Oakland's three nondiscriminatory reasons were a pretext for discrimination, because of the fact that in light of the city provided three reasons for its denial of Ms. Johnson, the first being that she was at a flat rate, and as we have stated in our briefs, there's a dispute as to whether or not the deputy director position was actually at a flat rate or within a salary range. And we've, unless the Court has additional questions about that, we would rely upon our brief for that argument. What evidence in the record is there that Tucker and Jordan received this increase? Well, Mr. Jordan actually testified in his deposition that he did receive salary increases. He was actually a deputy chief for part of the time that was covered by the retroactive salary increases. So he actually received not only retroactive salary increases pursuant to the PMA MOU, but he also received additional salary increases. In fact, he testified that, and in his declaration he establishes that, he was also received, he also received a salary increase to the top of the range once his position was approved. How about Jordan? The record is not as clear about Chief Jordan, about, you're asking about Chief Jordan? Yes. Well, Chief Jordan is the one who actually got the salary increases. Chief Tucker, the record is not as clear. With Chief Tucker, the question is exactly why he did not get a salary increase or a pay adjustment. But listen, your client was in a unique position because, I mean, she was uniquely qualified. They sought her out to have this position to be on the same level with these other deputy chiefs, I guess. Is that right? Right. And she had a very difficult job. Right. Right. And because it was uniquely made, they also, the city apparently, attempted to be clear that she was going to get a flat range of salary, I mean, a flat salary. And the range that you're talking about, I just want to make sure I understand why you say that it's a range because I think it becomes kind of important because the merit increases are only available for people that contain, you know, salary ranges. And hers was just the one amount, was it not? Well, there was no range in her range. Well, there actually is evidence of a range. What's that? The evidence is that there's a salary ordinance that's made to the public, and I can give you that particular site in the record. Didn't the city council here pass a specific ordinance for her position indicating that her salary was going to be set at this number and there was no range within that? Well, what the city council did was it approved a new position, the deputy director position. And the salary that was provided was the same salary as deputy chiefs, which were at a flat rate. However, she was also placed in a classification U31, which is one ‑‑ which is the reason why she was put into a range. And her pay grade level established what the range was. So there was a question of fact as to whether or not ‑‑ But she went in understanding that this was going to be her salary and that was going to be it. And then wasn't it all just sort of administrative sort of ‑‑ Because she was in this unique category of a job that they had specifically set out for her, it seems like the clerk people were trying to figure out how do we give her her paycheck because she's not really in any one of the, you know, round holes and they need to put this, you know, square peg into one that, you know, they have in their paperwork. And so they ended up, you know, finding this, I think it's U‑range. Is that the U‑range that you were in? U31. Yeah. But didn't she understand that that was going to be her flat? I thought it was made pretty clear, was it not? What was made pretty clear? That she was going to get a flat salary. Well, what was clear was that her rate was at the same rate as deputy chiefs. The question was whether or not it was in a salary range or a flat rate. And as the testimony shows, as the record reflects, there was a question even within the city of Oakland about whether or not it was a salary range. As the record makes clear, Marsha Myers, who was the personnel director, said she was within a range. And the head of the agency finance and management said that she was at a flat rate. And so as a result, the argument was that it could be either a flat rate or a salary range. But the point is, is that regardless, she would have been entitled to a pay adjustment. Based on what the district court held, and that Mr. Lindheim had the discretion to give her a COLA increase. There's nothing in the record that states that the position would have been precluded from any kind of salary adjustment. The question comes up about the issue related to the salary range, because Ms. Johnson, in having a conversation with the city administrator on October 31st, specifically raised the issue that if he believed that she was not entitled to a COLA increase, she could have also gotten merit increases based on her position being in a range. But didn't the city council have to approve the COLA increase? No. And the reason why is this, is because as part of the, as the October 13th letter specifically provides, Ms. Johnson was a me too. But also there are provisions, and I would point to the district court's finding at, in the Excerptive Records 3, as well as the declarations of the treasury manager, Catano Cassani, the principal HR analyst, Jamie Pritchett, as well as Dan Lindheim at Excerptive Record 223, in which all of them state that the city administrator has the discretion to raise the salary of a representative employee, unrepresented employee, to the salary of a representative employee. And under that provision, which is also covered by AI-501, the administrative instruction within the city of Oakland, the city administrator had the authority and the discretion to raise her salary. Even for a deputy director? Even for a deputy director. Because the issue here is that there's, the major question is, is representative, representative versus unrepresented. My client, Ms. Johnson, was unrepresented. And the AI-501, the administrative instruction 501, as well as the district court, in addition to the city administrator, and Dan Lindheim, all have the same language, that the city administrator had the authority to raise an unrepresented Ms. Johnson's salary to the level of a representative, a representative employee. And because of the fact that she was similarly situated to the deputy chiefs, she was entitled to the same raises as the deputy chiefs. There's no question, she was the only woman, the only person at that level, all of her employees, all of her male colleagues got raises. She was the only one who did not receive a raise. You had flat rate. What were your other two reasons? The other two issues, she was similarly situated, and then there was also the COLA increases. But in terms of the nondiscriminatory reasons, there were two other nondiscriminatory reasons. They were that the financial condition of the city and the impending retirement of Ms. Johnson. Now they are. Initially in the briefing, they were offered as nondiscriminatory reasons. They've now been withdrawn. And as a result, we would say that that in itself is evidence of pretext, because through the course of this litigation, the city's reasons for denying Ms. Johnson pay adjustments has shifted. It initially was that she was at a flat rate. Then it was that he relied upon Ms. Myers and he relied on Mr. Nolan. Then it was a flat rate, and then it was the financial conditions, and then it was the impending retirement. And now it's the flat rate. Mr. Landheim didn't have the discretion, and they've withdrawn the financial condition and impending retirement reasons. Sotomayor, did they say the impending retirement was withdrawn as a reason? Did they repudiate it, or did they simply give another one? Well, they've said that they were hypothetical, that both the district court and I misunderstood the briefing and the original motion, and that it's hypothetical. However, it's hypothetical. What does that mean? You'd have to ask Mr. Key. But at this point, where the case stands is that there's one non-discriminatory reason that's been offered, and that non-discriminatory reason is that it was at a flat rate salary and that the city administrator did not have discretion. That's totally contrary to what the district court held. There's a factual question about whether or not she was at a flat salary, but in addition, there's no evidence that the city administrator did not have discretion. In fact, the record is clear that the city administrator, as the district court held, that there is sufficient evidence that the city administrator had the discretion to award a pay adjustment to Ms. Johnson. You mean the COLA, when you talk about that? Right. Okay. Did you want to reserve the balance of your time? Yes. Okay. Thank you. Thank you. Thank you, and I may please the Court. Chris Key for defendants. The city's position is very straightforward in this. Dan Lindheim, on the basis of his understanding of the governing rules and the regulations and the analysis that was done by his staff, concluded that plaintiff was not entitled to, which is an important distinction, entitled to a raise because to a retroactive raise. That's what he told the plaintiff in the letter that the e-mail that he wrote to her. That was the argument that was made in front of the district court. That is the argument that he made in his declaration that was submitted as evidence. The city's position is that Lindheim couldn't have done this even if he wanted to. No. There's a distinction that I'm trying to make that between entitled, that she's automatically entitled to a raise, and that he had the discretion to award the raise. She was not his reason that he gave for denying her the raise was he did not think that he was entitled to it, that she was entitled to it. He then said in his declaration Is that different than saying I could give you this raise, but I've decided not to? Yes. Because if the city council had said in the regulations that created, I mean, in the ordinance that created the position that she was in, that her position was on a sliding scale and that she was not at the top of her scale, if there was room for her to move around within the ordinance, she would be entitled on the authority of the city council, which under the city charter has the exclusive authority with respect to compensation. The question with respect to discretion – I'm sorry, Your Honor. I just asked your opposing counsel that, and she said, no, it wasn't left to the city council. So I want to make sure I understand your argument here. I believe what counsel is suggesting is that the city council also in its authority said there are circumstances in which the city manager may have the discretion to award, to adjust the compensation, so that they're – it's a – they're delegating authority, in essence. And the circumstances for that, as Lindheim said – I'm trying to make this clear in my own mind, and forgive me for not grasping it quickly. At the point in time when Ms. Johnson asked for this retroactive salary increase and Lindheim said no, Lindheim's reason was that she was not entitled to that raise. That is the reason that he gave her. He subsequently, in his declaration, he says, And I would submit that it was entirely reasonable for him to not believe that he had the authority insofar as – So at the time he refused it, he thought he couldn't have given her that raise even if he wanted to. That's correct.   And he said, And I would submit that it was entirely reasonable for him to not believe that he had the authority insofar as he wanted to. That's correct. And those are the reasons that he – when the Court earlier in the argument referred to those reasons as hypotheticals, that's correct, that he said, if I had the discretion and it was not entirely clear to me that I did have the discretion, I would not in any event have granted her a retroactive increase for these reasons. And the – If the panel determined that his stated reason at the time of request was in fact pretextual or that it's unclear whether it was or not, can the city rely upon the other two grounds, the hypothetical grounds? Or have you, as your opposing counsel suggests, abandoned those? Well, the – no, the – that's a very interesting question, because I take issue with the notion that the city has abandoned them. Our position is that – Don't rely on them. They were not the reasons that Dan Lindheim gave to plaintiff, the plaintiff for denying the retroactive increase. So it's not clear to me that he was actually even relying on them. Does the city contend that Messrs. Tucker and Jordan were not similarly situated? The city contends that they were similarly situated in that they were – well, Jordan is an odd – he's sort of betwixt and between in all this, because he moved – he was a deputy chief, he was an acting chief for a period of time. He was in the bargaining unit, he was out of the bargaining unit. So there were very distinctly unique efforts that were made. Did Jordan and Tucker receive this retroactive pay increase? Jordan did. Tucker did not. Tucker is a white male. Jordan is an African-American male. Plaintiff is an African-American female. So the – but Jordan – Jordan did not. There's no other – But Tucker did. I'm sorry. I take that back. Tucker did not. Jordan did. And was it Lindheim who decided Jordan was entitled? Yeah. It's in – there's a declaration. Isn't there enough of just a yes or no? Yes. Yes, Your Honor. Yes. So you're saying that they all were similarly situated? Because I thought from reading your brief you were saying they were not similarly situated, all three of them. Well, no. From our brief, I don't believe that Plaintiff was similarly situated because she was not in the union. She was similarly situated to Jordan, but she was not similarly situated to the deputy chiefs who received their pay increases through the memorandum of understanding. But I would like to stress that the issue here is not necessarily whether the objective factual accuracy of the reason that Lindheim gave – I would submit on the record that it is – there's nothing that's incredible as that term is understood in the reason that he gave. But Plaintiff must go beyond that to show that it was a pretext for intentional discrimination against her on the basis of her race and gender. And there is no evidence of that beyond the actual explanation itself that would suggest that Lindheim himself, who was the decision-maker, was prejudiced against her. When did Lindheim come to this conclusion that contrary to what he told her, he in fact had the authority to grant the retroactive pay increase, but wouldn't have given it to her in any event? It's not clear from the record when that happened, but if I – Before or after this case was filed? I believe it was after the case was filed. And the reason I say that, Your Honor, is that in December of 2008, which was a month after Plaintiff left the employ of the City of Oakland, the City Council enacted Ordinance Number 12903, which says expressly, It has been unclear what authority the City Council had granted to the City Administrator with respect to awarding compensation to non-represented employees. So by way of this Ordinance – this is after the events took place between Lindheim and Plaintiff – because it has been unclear for this period of time, we are now, by means of this Ordinance, going to clarify what the discretion of the City Administrator was. So it was entirely plausible for him to think that he didn't have the discretion to make that action, because the City Council itself recognized that it was ambiguous at best as to what the City Administrator's discretionary authority was. What language in the AI-501 preclude did Mr. Lindheim from submitting a recommendation to the City Council that Ms. Johnson receive a very use of COLA increase? I don't know what information that – what language Lindheim himself relied on. My reading of that ordinance – I mean, of that administrative instruction – is that it allowed for a city manager or administrator to recommend to the City Council that unrepresented employees might be eligible for pay increases. I think the ambiguity was – and I think this ambiguity remains – is that Plaintiff was a single step. She was at the top of her range. So it was not clear, and it is not clear – Who was Jordan? Yes, Your Honor. Who was Jordan? Wasn't he? I'm sorry. So was Jordan, correct? Jordan – Jordan was – no, because he had – he was – had fallen under the memorandum of understanding. So he was – he had, through the auspices of the collective bargaining agreement, technically was eligible for increases, and those would then have been subject to approval by the City Council. So the City Council would have approved and did approve pay raises for Jordan. They did not for Tucker. Okay? Okay. So just help me out for a minute. What is the nondiscriminatory reason that you are telling us was relied upon that must be shown to have been pretextual? The flat rate reason that she was at the top of her – She was not entitled. She was not entitled to one because – Period, end of story. That's the justification. That's correct. She was not entitled on the basis of the statutory authority from the city, and then in terms of whether or not that was discriminatory, Lindheim relied on this detailed analysis from his staff that was specifically the declaration of Katain, Pritchett. Those are important because they spell out in considerable detail the parallelism between the positions, the methods by which they arrived at the conclusion. It's very detailed, and I believe it's difficult to read that to come to any other conclusion than it was a nondiscriminatory reason in the purest sense of the word. I guess my previous question is whether or not Mr. Lindheim could have recommended a COLA. Why didn't he submit any recommendation and permit the city to take up that issue? Why did he not do that? He didn't think she was entitled to it. The – yes. I mean, that was what he said.  He didn't think her job was created. That's correct. That's correct. And I should say it seems fairly clear that he did not believe that he did have the discretion to offer that, to bring it up to the council. He didn't think that was within his discretionary authority at the time. That's clear in his declaration. He says, I'm sorry, Your Honor. I take it from what you're telling us today is that at the point in time that this request was refused, his position was, you're not entitled, subtext, I couldn't give it to you even if I wanted to, or even if I wanted to recommend it for you. That's – that was the state of mind when it was denied. That's correct. After the litigation was filed, he came to the conclusion that he may have had the discretion, but he wouldn't have given it to her anyway. That's correct. What about her performance changed from point A to point B? I'm not understanding. What about the performance of her duties changed from the point in time that his mental state was, I couldn't give it to you even if I wanted to, to where he came to the conclusion that I do have the discretion to give it to you or recommend that it be given to you, but I think you're not entitled. I don't think you've earned it. Well, that's the decision. I don't want to exercise my discretion. I now think I have it, but I don't want to exercise it in your favor. What happened? Well, I think the confusion is that these are not merit increases. The only increases that she was entitled to were cost-of-living increases. The deputy chiefs did not get merit increases. So it had nothing to do with the performance of her job? No. No, Your Honor. It was a cost-of-living increase alone. And it's only one of those. She received two of them. She received one in 2006. She received one in 2007. The only one she did not receive was a retroactive one that was awarded in July of 2008. So we're talking about a single cost-of-living increase three months before she retired. Okay. Thank you. Thank you. With all due respect to my opposing counsel, there are a number of corrections I'd like to make in terms of the record. First of all, there was a difference between Assistant Chief Jordan and Ms. Johnson, that being that Mr. Jordan, as the October 13th letter specifically states, was at the top of his range. And therefore, he could not get a raise until the city or council approved him having a higher range. So therefore, he was not in the same position. As the letter of October 13th specifically states, the only person who was not at the top of her range and who was eligible for the increases that were requested was Ms. Johnson. And therefore, that request was made that her salary would be raised in the same way that her male deputy chief colleagues' salaries were raised. In addition, the city of Oakland repeatedly makes the point about the fact that there was an African-American male who got a salary. My client is an African-American woman. This court in Lamb v. The University of Hawaii has already ruled that in that situation, you look at the combination of factors. It does not matter what the race or gender of other people would be. You look at it in terms of who she is as an African-American woman. And the record is very clear that she was the only woman, an African-American woman, she's the only one who never got a salary. Now, on the issue of the administrative instruction 501, Mr. Lindheim was given that specific provision at the time that he received the request from Ms. Johnson. He was told at the time, Mr. Lindheim and none of the communications that he provided to Ms. Johnson at the time ever said that he thought that he did not have the discretion to permit salary increases. He never made that point. In fact, he refused to meet with Ms. Johnson. Although he was meeting and talking to Mr. Tucker and having conversations with Mr. Jordan, as the record reflects, he never would meet with Ms. Johnson. He simply thought, according to what the city of Oakland is saying now, is that she was not entitled to it. As the Court has made a point about, there's no issue about Ms. Johnson's qualifications. She had a difficult job. She was working at the same level as the deputy chiefs. And as a result, she believed and asked for, and Chief Tucker at the time asked for, for her to have the same salary increases as her deputy chief colleagues. Thank you very much. Thank you both for your presentations today. The case is now submitted. The final case on our docket, Gavin Hill v. Hill Love, has been submitted on the brief, so we are now in recess. Thank you very much.
judges: Schroeder, Hawkins, Murguia